HARVEY SISKIND LLP
LAWRENCE J. SISKIND (SBN 85628)
Email: lsiskind@harveysiskind.com
JANE A. LEVICH (SBN 293299)
Email: jlevich@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124

ECKERT SEAMANS CHERIN & MELLOTT, LLC
ROBERTA JACOBS-MEADWAY (admitted *pro hac vice*)
Email: rjacobsmeadway@eckertseamans.com
JOSHUA L. KIRSCH (admitted *pro hac vice*)
Email: jkirsch@eckertseamans.com
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Telephone: (215) 851-8400
Facsimile: (215) 851-8383

Attorneys for Plaintiff
BIOGEN IDEC MA INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOGEN IDEC MA INC., <br><br>                    Plaintiff, <br><br>   v. <br><br> LLOYD TRAN and NEUROBIOGEN, LLC, <br><br>                    Defendants. | Case No. CV-15-0743 CRB <br><br> **AMENDED FINAL JUDGMENT UPON CONSENT AND PERMANENT INJUNCTION** |

{00058993;1}
[PROPOSED] AMENDED FINAL JUDGMENT UPON CONSENT & PERMANENT INJUNCTION
CASE NO. CV 15-0743 CRB

I.    **STIPULATED FACTS AND CONCLUSIONS**

A.    This Court has jurisdiction of the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

B.    This Court has personal jurisdiction over Defendant, Lloyd Tran ("Tran").

C.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

D.    Plaintiff, Biogen Inc. p/k/a Biogen Idec MA Inc., is a Massachusetts corporation having an address of 14 Cambridge Center, Cambridge, MA 02142 ("Biogen").

E.    Defendant, Neurobiogen, LLC ("Neurobiogen") is a California limited liability company, which is controlled and directed exclusively by Tran.

F.    Biogen itself, through its predecessors in interest and in title, and related companies, is and has been engaged in research and development of pharmaceutical preparations, medical devices and medical diagnostic reagents for more than thirty years, and has built a large and successful business in connection therewith.

G.    Biogen has used BIOGEN and BIOGEN-formative trademarks in the United States continuously for more than thirty years.

H.    The relevant public and trade associate the BIOGEN mark and BIOGEN-formative marks with Biogen.

I.    Biogen is and has long been recognized in the relevant trade and public, as a maker of pharmaceutical products in connection with the care and treatment of Multiple Sclerosis, as well as a provider of other support services in connection with Multiple Sclerosis.  By way of example, Biogen's AVONEX treatment is one of the most prescribed treatments for relapsing forms of MS worldwide, and first appeared (as a mark and name) in commerce no later than May 1996.  Biogen's TYSABRI treatment, approved for relapsing forms of MS in the United States, first appeared (as a mark and name) in commerce, no later than November 2004.  Additionally, Biogen's http://www.msactivesource.com website, which helps people with MS live better, was created in or about January 2000.

J. Since long prior to the activities by Tran and Neurobiogen complained of herein, Biogen's use of the BIOGEN and BIOGEN-formative marks and names in connection with pharmaceutical preparations and related products and services has been continuous, commercially significant and substantially exclusive.

K. Biogen's BIOGEN and BIOGEN-formative marks and names are inherently distinctive as applied to its pharmaceutical preparations, related products, and services.

L. By virtue of Biogen's use in commerce of its BIOGEN and BIOGEN-formative marks and names in connection with such pharmaceutical preparations, related products, and services, such pharmaceutical preparations, related products, and services have become well and favorably known to the relevant trade and public under the BIOGEN and BIOGEN-formative marks and names.

M. Biogen is the owner of numerous federal registrations for its BIOGEN and BIOGEN-formative marks including U.S. Registration Nos. 2,099,409; 3,265,462; 3,165,812; 3,382,316; 3,509,066; and 3,251,473.

N. Tran caused Neurobiogen to do business in California no earlier than January 9, 2012.

O. Tran secured the domain name <neurobiogen.com> no earlier than December 24, 2011.

P. Tran individually and through Neurobiogen is using the NEUROBIOGEN trademark, name, and domain name in connection with his business in California wherein Neurobiogen is promoted as a "bio-pharmaceutical company committed to the discovery and development of new drugs to treat diseases for which there is significant unmet medical need."

Q. Neurobiogen represents that its first drug candidate is a "neuroprotective agent for treatment of … Multiple Sclerosis."

R. Use of NEUROBIOGEN as a trademark, name, and/or as the dominant component of a trademark, name, and/or domain name in connection the promotion, development, marketing, and sale of pharmaceutical preparations, particularly those directed to treatment of MS is likely to cause confusion as to source, sponsorship or affiliation with Biogen.

S. The designation NEUROBIOGEN is confusingly similar to Biogen's BIOGEN and BIOGEN-formative marks and names in sound, appearance, and commercial impression.

T. The services and products offered or planned to be offered by Tran via Neurobiogen under the NEUROBIOGEN mark, name, and domain name, are closely related to the products sold and services offered by Biogen under its registered BIOGEN and BIOGEN-formative marks and names, particularly those related to the development and sale of pharmaceutical preparations intended for the treatment of MS.

U. Use of NEUROBIOGEN is likely to cause confusion or mistake as to the source or sponsorship of Neurobiogen's products and services and to cause confusion or mistake as to the affiliation of Tran and Neurobiogen with Biogen.

V. Use of NEUROBIOGEN is accordingly in violation of Biogen's rights in its registered BIOGEN and BIOGEN-formative marks pursuant to 15 U.S.C. § 1114.

W. Biogen has no adequate remedy at law. The acts and activities of Tran - and his limited liability company Neurobiogen - complained of herein deprive Biogen of control over its reputation and goodwill, which constitutes irreparable injury.

X. The confusing similarity of NEUROBIOGEN to BIOGEN and BIOGEN-formative marks is likely to mislead persons in the relevant trade and public as to the nature, characteristics or qualities of the products and services and business of Tran and Neurobiogen.

Y. The acts and activities complained of herein constitute false and misleading designations of origin and false and misleading representations in violation of 15 U.S.C. § 1125(a).

## II. ORDER AND INJUNCTION

It is hereby ORDERED and adjudged that:

1. Tran and his agents, servants, employees, attorneys and all entities, companies, corporations, limited liability corporations, partnerships, limited liability partnerships, professional corporations, professional limited liability corporations, ventures, affiliates, and all other persons and entities owned, controlled, supervised, managed or otherwise acting in concert and participation with

him, as well as Trans's successors and assigns (collectively the "Tran Entities"), jointly and severally be and hereby are, permanently restrained and enjoined from:

    a.    engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure to Biogen's business reputation or weaken the distinctive quality of Biogen's marks, names, reputation or goodwill;

    b.    using any false description or representation including words or other symbols tending to falsely describe or represent goods or services, directly or through any entities, companies, corporations, limited liability corporations, partnerships, limited liability partnerships, professional corporations, professional limited liability corporations, ventures, affiliates, and all other persons and entities owned, controlled, supervised, managed or otherwise acting in concert and participation with them, as being those of Biogen or sponsored by or associated with Biogen and from offering any such goods or services in commerce;

    c.    using any simulation, reproduction, counterfeit, copy or colorable imitation of any BIOGEN-formative marks or names in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any good or service in such fashion as to relate or connect, or tend to relate or connect, such goods or services in any way to Biogen, or to any goods or services sold, manufactured, sponsored or approved by, or connected with Biogen;

    d.    making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by the Tran Entities are in any way associated or connected with Biogen, or are provided, sold, manufactured, licensed, sponsored, approved or authorized by Biogen;

    e.    engaging in any conduct constituting an infringement of any BIOGEN or BIOGEN-formative marks and names, of Biogen's rights in, or to use or to exploit, said marks and names, or constituting any weakening of Biogen's names, reputation and goodwill;

        f.      using or continuing to use the NEUROBIOGEN mark or name or trade names in any variation thereof, including on the Internet or social media, in the text of a website, as a domain name, or as a keyword, metatag, or any part of the description in any submission for registration of any Internet site with a search engine or index;

        g.      acquiring, registering, maintaining or controlling any domain names that include any BIOGEN-formative trademark or any marks confusingly similar thereto, activating any website under said domain names, or selling, transferring, conveying, or assigning any such domain names to any entity other than Biogen;

        h.      effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Stipulation to Entry of Final Judgment and Permanent Injunction.

2.      Tran will within sixty (60) days of the date of this Order, remove the website found at <www.neurobiogen.com>, such that the web address will no longer be operational and/or resolve to an error message as of no later than sixty (60) days from the date of this Order; further, the website <www.neurobiogen.com> will not serve to redirect any web-traffic to any other website as of no later than sixty (60) days from the date of this Order;

3.      Biogen represents that it makes no objection to the use by Tran of "BIONEUROMED";

4.      Tran will within sixty (60) days of the date of this Order, cause Neurobiogen to be renamed "BIONEUROMED" with the California Secretary of State and all other entities through it is incorporated, registered, or licensed to do business or operate; no business will be transacted under the "NEUROBIOGEN" name as of no later than sixty (60) days from the date of this Order;

5.      In the event that Tran is ever found by a court of competent jurisdiction, after notice and opportunity to be heard, to be in violation of this Stipulation to Entry of Final Judgment and Permanent Injunction, Biogen and Tran agree that (a) Biogen will be entitled to all normal relief which it may request from the Court; and (b) Biogen will be entitled to recover any and all future and additional damages, fees and costs incurred by Biogen due to Tran's violation of this Stipulation to

1  Entry of Final Judgment and Permanent Injunction, and judgment shall be entered against Tran in
2  that full amount;

3     6.  The Court shall retain jurisdiction for the purpose of making any further orders
4  necessary or proper for the construction, implementation or modification of this Stipulation to Entry
5  of Final Judgment and Permanent Injunction, the enforcement thereof and the punishment of any
6  violations thereof;

7     7.  Any act by Tran whether direct or indirect in violation of the terms or conditions of
8  this Stipulation to Entry of Final Judgment and Permanent Injunction may be considered and
9  prosecuted as contempt of this Court; and

10    This Stipulation to Entry of Final Judgment and Permanent Injunction shall be binding upon
11 and shall inure to the benefit of the parties hereto and their respective heirs, successors and assigns,
12 and acquiring companies.

13    No costs are awarded in connection with this Stipulation to Entry of Final Judgment and
14 Permanent Injunction, and each side shall bear any of their own attorneys' fees in connection with
15 this matter.

16    The Court expressly determines that there is no just reason for delay in entering this
17 judgment, and pursuant to Rule 54(a) of the Federal Rules of Civil Procedure, the Court directs entry
18 of judgment against defendant, Lloyd Tran.

19    This Final Judgment shall be deemed to have been served upon defendant, Lloyd Tran, at the
20 time of its execution by the Court.

21                IT IS SO ORDERED AND ADJUDGED:

24 DATED: May 29, 2015         _____
                               HON. CHARLES R. BREYER
25                             United States District Court Judge

{00058993;1}                    -7-
[PROPOSED] AMENDED FINAL JUDGMENT UPON CONSENT & PERMANENT INJUNCTION
CASE NO. CV 15-0743 CRB